Smith, J.
(dissenting). The majority holds that the defendant’s actions constituted a good-faith effort to perform under the real property purchase agreement as a matter of law. Because I believe that on this record good faith is an issue of fact, I dissent.
On March 31, 1993, the parties entered into a contract for the purchase of real property which contained a "mortgage contingency clause” which obligated defendant to "make good faith application for” a $135,000 mortgage without delay. Specifically, the contract provided:
"New Mortgage: By Buyer obtaining at his own cost and expense, a Conventional mortgage in that amount [$135,000] for the maximum term available, but not less than-years, at the Lender’s prevailing rate of interest at time of closing. Buyer shall make good faith application for this mortgage without delay. Written approval for this mortgage must be obtained by 5/15/93 or Seller may cancel this contract at Seller’s option. It is agreed that if this mortgage cannot be obtained, this contract is terminated (null and void) and the deposit shall be refunded in full.”
According to defendant, he contacted one bank during the "mid to later part of April 1993, to schedule an appointment to apply for a mortgage.” Prior to his scheduled meeting, defendant submitted, at the bank’s request, the purchase contract, renovation plans, and his prior year’s income tax return. With less than two weeks remaining before the deadline to apply for the mortgage expired and over a month after signing the purchase contract, defendant met with a bank vice-president on May 3, 1993.
At the meeting, the bank’s vice-president gave defendant a "preliminary opinion” that the bank would not approve a mortgage for $135,000 due to the "ratio of the residential and *1046 commercial use of the property”. Nevertheless, the vice-president indicated that the bank would be willing to approve a mortgage for $116,250. The defendant prepared the application for $116,250.
After meeting with the bank vice-president, defendant contacted plaintiff and requested an extension of the mortgage deadline to May 31, 1993. Defendant did not, however, inform plaintiff that the sole pending mortgage application was for only $116,250, approximately $20,000 less than the amount specified under the purchase contract. Plaintiff granted the request. Defendant made no attempt to obtain additional financing or investigate other mortgage arrangements during this time.
When the bank finally issued a mortgage commitment for $116,250, defendant advised plaintiff that the contract was terminated "[b]ased on the bank’s refusal to grant the mortgage specified by the contract.” Plaintiff sued for specific performance and damages. The defendant counterclaimed for the return of the $1,000 deposit.
Supreme Court granted defendant’s motion for summary judgment dismissing the complaint and awarded defendant his contract deposit. A majority of the Appellate Division affirmed Supreme Court’s order stating, "Defendant submitted proof in evidentiary form establishing that he acted in good faith to obtain a mortgage” and that "it would have been futile for defendant * * * to apply for a mortgage” of $135,000 after being told that the bank would not grant it. Two Judges joined in a dissenting opinion which stated:
"In our view, the issue whether defendant acted in good faith to obtain a mortgage should be determined by a jury. Although defendant was not obligated to apply to more than one lender to demonstrate good faith, the sales contract provided that defendant would make application for a mortgage in the amount of $135,000. Defendant made an application to a single lender for a mortgage in the amount of $116,250. Whether that constituted a good faith effort to obtain a mortgage in the amount of $135,000 raises an issue of fact to be resolved by a jury.” (222 AD2d 1087.)
It is well settled that as "long as the purchasers exert a genuine effort to secure the mortgage financing and act in good faith, they are entitled to rely on the contract and may recover their down payment if the mortgage is not, in fact, approved” *1047 (Cone v Daus, 120 AD2d 788, 790 [citation omitted]). It is also well settled that good-faith performance may be satisfied as a matter of law by a buyer’s mortgage application to one bank if that is all that the contract requires (see, Ruggeri v Brenner, 186 AD2d 441, lv denied 81 NY2d 704 [good faith found with one mortgage application when contract required buyer to apply to a lending institution of "plaintiffs choice”]; Macho Assets v Spring Corp., 128 AD2d 680, lv denied 69 NY2d 609 [good faith found with one mortgage application when contract required buyer to apply to a lending institution which was selected by purchaser]; Glassman v Gerstein, 10 AD2d 875 [good faith found with one mortgage application when contract required buyer to apply to "o lending institution” (emphasis added)]).
In contrast, summary judgment may be entered against the buyer when it is demonstrated that the buyer’s mortgage application was not made in conformance with the requirements of the purchase agreement. As noted in Silva v Celella (153 AD2d 847), the buyers "had no right to cancel the contract since they had applied for a mortgage in an amount which differed from the amount prescribed in the contract” (id., at 848 [summary judgment granted against buyer when mortgage application exceeded contract amount]; see also, Post v Mengoni, 198 AD2d 487 [plaintiff buyer not entitled to recover down payment where he applied for a mortgage $100,000 greater than that required by the mortgage contingency clause]).
In Tanney v Greaux (174 AD2d 728, mod 78 NY2d 1117) the Court of Appeals determined that good faith was a factual issue to be resolved by a jury. In Tanney, the real property purchase contract provided that the closing would take place within 12 months after the issuance of a building permit by the New York City Department of Housing Preservation and Development. Following the defendants’ application, the City Council enacted a statute which prevented the defendants from obtaining the necessary certification for 18 months. Despite the change in the law, the defendants continued their efforts to obtain certification. The City Council subsequently extended the moratorium for an additional five years. A majority of the Appellate Division determined that there was no factual issue of good faith in failing to cancel the contract immediately upon the decision to extend the moratorium for five years.
The dissenting opinion recognized that the defendants’ continued performance in trying to obtain certification despite the change in the law was inconsistent with a sincere view *1048 that performance was excused. The dissent concluded that factual issues were raised as to the buyer’s good faith. On appeal, this Court modified the determination of the Appellate Division for the reasons stated in the dissent (78 NY2d, at 1119).
In fact, courts have continually denied summary judgment when factual issues were raised concerning the sufficiency of a party’s performance under the purchase agreement at issue (see, e.g., Katz v Simon, 216 AD2d 270 [factual issues of good faith and diligence raised concerning reasons for delay in applying for mortgage]; Zwirn v Goodman, 206 AD2d 360 [factual issues raised concerning good faith in submitting incomplete mortgage application]; Wilson v City of Long Beach, 133 AD2d 684 [factual issues raised concerning good faith and due diligence in obtaining necessary permits and financing]; BTS, Inc. v Webny Corp., 157 AD2d 638 [factual issue raised concerning buyer’s good faith when its deteriorated financial position was known to it at the time the agreement was executed]; Blask v Miller, 186 AD2d 958 [factual issue raised as to plaintiffs’ good faith in contracting to purchase property which they possibly could not afford]).
Here, it is undisputed that defendant buyer did not perform as required under the plain language of the agreement. Indeed, defendant never made an application for a mortgage in the amount required by the contract. These facts alone create an issue of fact regarding defendant’s good faith in performing his obligations under the purchase agreement. Moreover, defendant’s actual application and subsequent request for an extension to apply for the mortgage are inconsistent with a finding of good faith as a matter of law. Finally, the defendant’s reliance on a "preliminary opinion” of a bank officer is insufficient to establish a good-faith basis to excuse performance.
Moreover, while the majority of the Appellate Division concluded that it would have been futile for defendant to apply for a mortgage of $135,000 based upon this record, other courts that have examined the issue of "futility” have relied on far more evidence to demonstrate that the failure to obtain a mortgage was beyond the control of the mortgage applicant (see, e.g., Lunning v 10 Bleecker St. Owners Corp., 160 AD2d 178, lv denied 76 NY2d 710 [mortgage revoked upon buyer’s financial losses due to ill health and subsequent death]; Bobrowsky v Landes, 124 AD2d 618 [mortgage revoked upon buyers’ financial losses due to circumstances beyond their control]; Cone v Daus, 120 AD2d 788, supra [mortgage revoked upon wa *1049 ter flow deficiency, correction of which was beyond the control of buyers]; Elghanyan v Mundy, 225 AD2d 654 [based on information provided prior to the filing of a formal application, at least two, and possibly four, banks told potential mortgage applicants that mortgage would not be approved based upon "large business losses indicated” on past tax returns]).
Here, defendant delayed in applying for a mortgage and his application was admittedly in "an amount which differed from the amount prescribed in the contract” (Silva, supra, 153 AD2d, at 848). Furthermore, defendant’s continued attempts to perform by requesting an extension of the mortgage deadline without telling the seller about the "futile” circumstances raises a factual issue regarding good faith (Tanney, supra). Finally, the defendant’s reliance on a "preliminary opinion” of a bank officer is insufficient to establish a good-faith basis to excuse performance summarily.
In sum, the language of the contract will govern whether a buyer is entitled to a return of his deposit. Here, defendant did not comply with the language of his purchase contract. Excusing the defendant’s performance represents an inappropriate and extreme expansion of the definition of good faith as a matter of law. Accordingly, I respectfully dissent from the majority’s affirmance of the Appellate Division’s decision. The defendant’s motion for summary judgment should have been denied.
Order affirmed, etc.